16-2704-17-2007 Good morning, Your Honors, and may it please the Court. My name is Stephen McKinney, and I represent the plaintiffs in this action. Before the Court this morning in this appeal, there are three issues. Whether the plaintiff's rights were violated under the Fourth Amendment, whether the plaintiff's Fourteenth Amendment rights were violated, and whether or not the District Court's award of attorney's fees to the plaintiffs for obtaining a preliminary and permanent injunction. Can I ask you a question about this case that is just an oddity to me, and it makes me think I'm missing something about how the case proceeded? Yes. It's quite unusual to have a case where the key 1983 claim that's left is the Monell claim against the county. So usually those claims we see in connection with claims against the individuals. And I just found myself puzzled here, given all the record evidence and given all of your claims, why there is not in front of us claims against the individual officers that did the search with respect or the seizure with respect to this dog or that dog. I certainly would understand why you would still have a Monell claim. That makes perfect sense to me. But I don't understand why we don't have the individual officer claims. Is there some reason why that didn't happen, or what am I missing? I think as a practical matter, the case got moving very quickly. The Court heard the preliminary injunction issue very quickly. Initially you were focused on the statute, the ordinance. So I understand that, and I can understand why you'd focus on that. And then you just didn't have a chance to amend the complaint? Is that the point? It's not, I think, that we didn't have a chance. The Court sent a very aggressive scheduling order in this case. We conducted, we had about three months. I'm not an expert trial lawyer or trial judge, but there's one thing I know. No trial judge ever sets an order until there's a complaint. So why didn't the complaint focus on all these individuals that you have so much evidence about? And when I say individuals, the officers that seized this or that dog, what am I missing? I think in the initial stages of the complaint, we didn't know who the officers were. My clients didn't know who the officers were. You moved to amend, and I mean, the judge would have granted it, especially if you say you didn't know who the officers were. Like, you eventually knew Jackson was involved, right? Yes. And you never chose to move to amend. I mean, it doesn't matter how aggressive a schedule a judge sets. You can always move to amend. Yes, we could have moved to amend, but we didn't. We believe, and I still believe, there's Monell liability here because of the… It's not proof that, you don't have to do this. That's not what I'm saying. Okay. It's a practical question, which I just found myself scratching my head about. Okay, I think this is a practical matter. When we were moving in the case, we'd obtained the injunction. The court had an aggressive scheduling order, and we wanted to move forward with the case. I see. And we didn't want to slow it down to amend. I do want to talk first about the Fourth Amendment issue, an issue in this case. Here, these were all warrantless seizures. No dispute here that there were never any warrants issued for the seizure of the plaintiff's pets in this case. Additionally, there was no issue that there was no consent given for any of these seizures. The city had admitted a number of times in interrogatories and requests to admit that there was no consent. I thought there was consent for some of them when they went up, and some people consented to them taking the dog, maybe under protest, but they still consented. Well, we had argued that before the trial court below that the consent, any consent that may have been given, was under duress and was not actual consent sufficient to meet a Fourth Amendment analysis. And the district court never relied on that argument, and it was never, frankly, challenged by the defendants below. It was certainly never a point of contention in the district court's analysis. Traditionally, when you have a warrantless seizure, that's presumed to be unreasonable unless there is consent or exigent circumstances. Or plain view. Or plain view, which was argued below but wasn't part of the district court's analysis. Here, the district court's analysis, frankly, didn't even focus on exigent circumstances, which I don't believe there were in this case. Obviously, to have exigent circumstances, you need a continuing and ongoing crisis. What about a hard-dressed dog that was jumping in and out of the window and harassing people? For a hard-dressed one dog, number one, I don't know that there was evidence that the dog was harassing people. There was a report that the officer testified about in his affidavit, but there was no witness by the officer of the dog harassing people. What the officer testified to in his affidavit... Do you have to wait for that? I mean, this is a pit bull jumping in and out of a broken window. And, I mean, I for one wouldn't be unhappy if an officer took control of that situation. For Mr. Harder, again, the question is, does the officer have the right at that point to seize the dog outside, when it's outside, you know, out of the house, which is not what the officer did here. Instead of waiting for the dog to come back out of the house... That's the one dog that was seized inside the house. I can grant you that. But why isn't that an exigent circumstance? I mean, if you're the officer, you don't say to yourself, hey, he keeps jumping in and out of the window. Let's wait until he comes outside again where it's more dangerous. Whereas when it's inside, fewer people at risk. I don't know if that's fair to me. I don't know that that's fair because, again, we're now talking about reaching a man's home and entering his home without his permission. He's not at home to grant permission. When there is opportunity, the dog's not jumping to the front yard or running in the street. The dog's jumping to a backyard. There is opportunity to go to the backyard and seize the dog when it's outside. And, again, that only excuses... Was the backyard fenced in this particular case? It was, though I believe there was testimony that there was a gap in the fence that would have been possible for the dog to get through. But, again, that only goes to one of Mr. Harder's dogs. And so what is the record evidence that you point to that establishes a policy or a custom of seizing these animals that's violative of the Fourth Amendment? I think two things. Number one, the ordinance itself, which said that officers could seize upon the officer's determination of probable cause any animal it believed to be in violation of the ordinance. That was a portion of the ordinance that the court struck down. Additionally, Defendant Harry Ward, who was the director of the Animal Control Department of the city, testified that that was their standard operating procedure. They pick dogs up if they believe they were unlicensed or if they believe they were loose. He testified that he never, in seven years, one time he remembered having to obtain a search warrant or a seizure warrant. Their policy was to take dogs they believed to be in violation of the ordinance. And the ordinance told them they could do that. And Mr. Ward told them they could do that. Taking dogs that are in violation of the ordinance is not a problem, right? That's probable cause. Violation of the ordinance being, for example, unlicensed. That's okay. So are you saying that they didn't have sufficient, I guess, objective guidance to guide them in their determinations of what did and did not violate the ordinance? I mean, push that out for me. I think, if I may answer Judge Donald's question, I think the problem with the Fourth Amendment analysis here is they never went to obtain warrants. It didn't matter whether there were exigent circumstances or not. They never obtained warrants.  I don't think the record contains it, and I don't know the answer to this question, but it's hardly obvious to me that the way police deal with dangerous dogs or unlicensed dogs is getting warrants. That's not obvious to me. I assume what usually happens is they get calls, there's a menacing dog, and that's the exigent circumstance, or they see that it's not licensed and they pick the dog up. I just think that's the way, I don't know, but it's not implausible that that's how it works. So I just don't know what it means that there's not a track record of getting warrants. It seems to beg the question. It doesn't tell me, it doesn't prove they had a policy that violates the Constitution, so that's what I'm struggling with. Well, I think the circumstances under which many of the plaintiff's dogs here were seized, these were dogs who were seized that were playing with their owners in their front yards. There wasn't a call to the police. Was there a single one that they seized that actually was licensed? I don't believe so. But, again, if I may, Your Honor, the police aren't walking up and saying, well, this license, this dog, show me the dog license and I'll take it. The license issue is an after-the-fact justification in all of these cases. They say, well, the dog is loose. It's not on a leash. I mean, that seems pretty bad. If it's an after-the-fact justification, they went 14 for 14 in seizing unlicensed dogs, even by your own concession. I don't think it's luck. I think there are a lot of people in the city of Detroit that just don't license their dogs. I think there was testimony in, I don't know if it was before the trial court, but there was testimony that is not uncommon. If they're unlicensed, is that justification to seize them? No, it is not. If a dog is unlicensed under both the city of Detroit ordinance, which incorporates state law, there's an entire procedure that has to be followed to seize the dog, which includes setting notice to the county treasurer. But that's state law. That's a state law violation. But that also, the city of Detroit ordinance incorporates that part of the state law. It says dogs who are unlicensed may be seized according to the dog law of 1970. I'm going to be careful about what part of your arguments we're talking about. What you're talking about right now might bear on the due process stuff, but I'm not sure how it bears in the Fourth Amendment, which is where I thought we were. Because if you violate state law, that doesn't prove a Fourth Amendment violation. I mean, if you have probable cause that someone's violating the law and you seize them, that's okay under the Fourth Amendment. You can't respond by saying, ah, but in doing so you violated state law. That's a separate problem, maybe a due process problem, but it doesn't prove that there was a Fourth Amendment violation. I understand that argument, but there was no establishment that there ever was probable cause to seize the dog in the first place. Nobody ever went to a magistrate and said, you know, we believe the dog is unlicensed and we need to go seize it. Nobody ever went to – You can see that if the dogs are menacing or harassing people, they don't need a warrant. If they're actively menacing and harassing people, yes. And the officer sees it, yes, they don't need a warrant. But none of these – What about if they're just running loose? If the dog – again – There's no indication that they're menacing, but they're just running loose. If they're running loose, I mean, and there's no owner present, I mean, then yes. But those aren't facts in this case. None of the plaintiffs have. One of Judge Sutton's first questions, or maybe you asked it, maybe you didn't, so the policy or custom is you can't seize a dog under Michigan law and under Detroit policy without going through a specific process. So it seems like this is an individual claim because even – and I agree with Judge Sutton. There's a different Fourth Amendment analysis. But to go back to what – this isn't an individual liability issue. This is a policy or custom. And what you're saying is the policy or custom has both a process and seems permissible under the Fourth Amendment. I'm not certain that I agree that the policy or custom had a process. Well, you said it came from the ordinance, and the ordinance set this process in place to seize a dog without a license, and you had to go through certain steps. That seems perfectly permissible. If that would have been what happened in this case, that would have been permissible. But they didn't follow that policy or custom. Instead, the policy or custom they followed was 612E, which the court struck, which said that a dog can be seized upon probable cause of a belief of violation of any section of the ordinance. And it didn't require – it allowed the officer to make the probable cause determination. It didn't require a magistrate. Right. So here's what I find tricky about this case. I grant you that the ordinance is invalid, and credit to the city for acknowledging that and not defending it anymore. What's on the Monell side of this, you have to show the policy is unconstitutional, and then each of the unconstitutional violations occurred because of the policy. What's very tricky about this case is the one instance where they actually did the worst thing allowed by the ordinance, go into a house, seems perfectly justified given Big Mama or whatever that pit bull's name, that behavior was. That seems sufficiently menacing. It doesn't have to be actively menacing. That justified what happened. Everything else is outside houses, sometimes on property, sometimes not. But it's hardly obvious that they were doing what they did because of the ordinance as opposed to seeing an unlicensed dog, a stray dog, a menacing dog, and kind of as proved by the fact that every single one of them was unlicensed. So you have to show, you not only have to just show something that was bad, an unconstitutional policy, you have to show they caused these violations. And so that's what I'm struggling with. I think this is what Judge Donna was asking before. And I know my time has expired, but if I may just answer the question. The customer policy is the ordinance. I'm going to grant you that. I'm going to grant you that. Which Director Ward testified that they followed. They picked up unlicensed dogs. They picked up dogs that they claimed were loose or a claim that the dog was, quote, always out. And they did that without ever once going to obtain a warrant to do so. And you can't just see. The warrant begs the question as to whether there was accident circumstances, a stray dog, or unlicensed. But, again, an unlicensed dog isn't an exigent circumstance. I think maybe that's the part. It's a plain view violation of the local law. There's nothing in the record below that shows that the officers were acting in plain view, that they saw the dog was somehow unlicensed. You can't just walk by a dog and there's nothing in the record below that indicates. The officers simply walked by the dog and said, oh, I recognize that to be an unlicensed dog. That's a paperwork issue that they have to look up back at the DAC afterwards. But we do know they were all unlicensed. Again, after the fact, yes, we do. Can I ask one question? Yes. What's the deprivation for the due process argument? Is it the taking of the dog or is it something more? It's the taking of the dog. So it's not the taking and exposing them to horrible conditions. It's not the taking and euthanizing them. It's the actual taking. That's what you claim. It's the taking of the dog. And, again, that becomes a permanent deprivation when they are exposed to the. I understand. But the claim you made is just the taking. Yes.  Thank you. Yes, Your Honor. Thank you. Thanks. So, Mr. Allen? May it please the Court, my name is James Allen. I'm here on behalf of the defendants and the appellee in 17-2077 and appellant in 16-2704. The clerk had indicated previously that when I come up that I should ask as to whether or not I'll be allowed rebuttal on the fee issue. No. Okay. Just get it all done. The appellant is arguing a case that he doesn't have. This is not a situation where people are minding their own business in the comfort of their own home and the police are busting in. The best way to put his case, and I think he's listening to our questions, and he's saying the policy is the ordinance, and he's allowed to do that. I think that's fair, and it's an ordinance he agrees is unconstitutional. And as for causation, he says it's the ordinance that led to each of these seizures, and if that's true, you've got your manel claim. If the seizures were unconstitutional, but let's just accept for the sake of argument that there are some issues of fact about this or that seizure. How do you respond to the point that the policy is the ordinance and whether it caused, that's what the officers were doing with each of these seizures? The ordinance was never applied in any of these cases. The unconstitutionality. Are you arguing that the policy is not the, that that doesn't establish the violation? No, because it wasn't Harry Ward's policy. It wasn't the ordinance permitting unauthorized entry into homes that went into play in seizing any of these dogs. I just want to hear the answer. Why do you say that? That's very important. The portion of the ordinance that was challenged and that was ruled unconstitutional and that has been enjoined is a portion of the ordinance that allows the unauthorized warrantless entry into a home to seize a pet. Well, it says property. It doesn't say, I don't think it just says home. The only issue, the only issue. The new law allowed officers to enter any real property in the city for the purpose. Am I wrong in thinking that it's property as opposed to the actual inside the home? Yes, you're correct that it allows entry onto the property, but these seizures didn't. With the exception of Mr. Hardrick's case, which your honor is. We got the pit bull. We got that one. All of these seizures occurred on 7 Mile Road, on Warmer Street. I thought some of them were in the backyards. Well, after the entry was made in the Hardrick case, again. Wait, wait, wait. So in the Hardrick case, they went in the basement and took a puppy out of a crate. Correct. And a dog in the backyard. Once the exigency is over, once they take the mama or whatever. The baby or puppy, I believe is the name of the dog, was in the basement in plain view. Wait a minute. But the basement is not, inside the basement cannot be. They heard the dog in the basement. Inside a basement cannot be plain view. You cannot go into an area that is private and then say, oh, because I'm here. Impermissibly, that's plain view. You can't make that leap. This is part of the record. Once the officers made entry into the home, again, they didn't know what was going on in the home. One of the reasons why. They made entry into the home pursuant to. The dog jumping back into the window. They didn't know whether there was a baby in there that had been bitten. They had to secure the premises. Isn't there at least, isn't there at least a material issue of fact as to whether or not this circumstance constituted an exigent circumstance sufficient for them to take the actions that they took? Not if you believe that an officer that comes onto that scene has x-ray vision into the home and can see whether there is a person that's being molested by that dog. I mean, we have. There's no evidence of that. The evidence they had, the exigency, was the dog was going in and out and harassing people on the outside. So once you get the dog, you have full authority to search the entire home. Is that right? Yes, to ensure that the scene is secure. Absolutely. But you've got the dog. I'm not following you. What. The officers heard the puppy in the basement that was nursing off of the dog that was jumping in and out. They made a determination that that dog should go with its mother or it might perish. So it's not plain view. It's plain ear. Once they're inside, they heard the dog. Yes, Your Honor. And they were also in the process of securing the premises to make sure that there's no injured people in there. One of the reasons why they would have made the entry in the first place is they don't know whether there's somebody that's injured on the inside of the house that's unable to control the dog once it's going in and out of the house. That was a reasonable thing for them to do. Let's, for the sake of argument, cabin that one off. Let's go to the other ones that were. I think it's pretty easy if they're stray, they're not on property. What about the other ones that allegedly were still on the property? Let me give you a specific one. Myrtle Rice. The officer said the dog wasn't listening to the parent. Anyone that's had a dog knows that happens. I mean, you could seize every dog in America under that standard, and they took it from the yard. It had just recently escaped and had been at large. It had been at large. It was also unlicensed. And our position on all of the unlicensed dogs is that they're contraband. There is no property interest in property. So the officer knew that the dog was up on Sing and knew that the dog was unlicensed? Isn't that something that they learned subsequent? Well, they can see that the dog is not tagged. And the ordinance requires. Okay, but the fact that he's not tagged, that didn't make them know that he was unlicensed, did it? Well. You don't have to be tagged on your own property, right? Right. The reasonable conclusion that they drew was that the dog was not licensed at the time. But you don't have to be tagged on your own property? On the property? No, not in the property of the critics. I thought the testimony as to Myrtle Rice's dog is they saw the dog come out the front door and the dog wasn't listening. Correct. But is that the same one where they'd had a report that that dog was off the property? Yes, that dog had been at large and had been brought back to the property. There's two things to talk about.  Yes. Okay, so Judge Edmonds ruled on the ground that there was no summary judgment, no material trialable issue of fact as to each one of the seizures in terms of a Fourth Amendment violation. Correct. And that's one way to think about the case, and I know you've argued that both in your briefs. But the other way to think about the case is this separate alternative that was there a policy that caused each of these alleged violations? So even assuming for the sake of argument they're violations, and I'm still struggling what the policy that was being implemented was. His argument is that, well, it's the ordinance. And the ordinance said you can go on any property you want, and that's how this all happened. And what's the answer? Is it because wards said, no, don't implement the policy that's too aggressive. You should have exited circumstances or a plain view problem or a stray dog. How do we know what they were doing and why? Our position is that the policy is irrelevant when they make the scene and they determine that there is an exigency. And in many of these cases, there was a voluntary surrender. Once the homeowner, in one instance McConnell, drove the dog to the facility itself. If there's a policy on seizing the dog immediately upon seeing that they're in violation of the ordinance, it certainly was not a policy that was followed in that situation because McConnell was allowed to take the dog to the Detroit Animal Control Shelter herself. And others were given the option. In fact, it was, I believe, Mr. Weems that opted to have the dog taken to another facility where it bit the workers at the other facility, at the private facility, and was destroyed as a result of the fact. So what do you say that the policy was under which these officers were operating? Can you articulate and state the policy for us here? Well, I don't believe that any of these seizures were undertaken pursuant to a policy. Was there a policy? There may have been a policy that Mr. Ward had, but that policy was not followed. It was irrelevant to these seizures. So were the seizures then conducted pursuant to the ordinance? Yes. Well, then that's the policy. But the only part of the policy that was found to be unconstitutional was the portion of the policy that allowed, and that was never applied to any of these individuals, was the portion of the policy that allowed for a warrantless entry into the premises of someone's home. I thought, wasn't the ruling about all the property, real property?  You're saying it was only about the home. It was the portion of the ordinance that was ruled unconstitutional, was that portion of the ordinance that allowed for warrantless entry into the home. Tell me what it means. The law said officers may enter, quote, any real property within the city for the purpose of capturing, collecting, or restraining any animal. What part of that, is any part of that still good? It's been rewritten, Your Honor. So you're saying effectively it means you can go on property outside, but not in the house? If a dog is menacing somebody, we have situations here where... That's different than what that says. But the application of the statute did not, was not... I thought the ordinance was found facially unconstitutional. That means the whole thing's gone. Gone. Only the portion of the ordinance that allowed for warrantless entry and seizure of property. Of the pets. Of the what? Of the pets, Your Honor. But that can be out in the yard, and that can be in the house. Correct, but in the instances, there was no instance of the 14 plaintiffs involved here where the pets were seized from inside a house, except for Mr. Hardrick's case, and we've gone over that. The more I listen to this argument, the more I'm really thinking the case doesn't come down to a Manel thing. It's just really whether there's a triable issue of fact as to each of these violations. I mean, you won on that. It's not the end of the world. If you win, you win, but that seems like what the case ultimately is about, given that the ordinance, why else were they doing what they were doing? We have no other policy. We have no other directive. We have no other guidance. We just have the words of admittedly unconstitutional policy. We also have the words of the officers that were involved in what they were experiencing when they came on the scene. No, no, no, that's my point. My point is the case comes down to what they did in each seizure. And their testimony, their affidavits and their testimony is unrebutted in this case. And what counts in terms of what they actually did was what subjectively was going through their minds at the time. They came onto the scene and had seen a dog that had just bitten another human or had just bitten another animal. And in those instances, again, the application of the ordinance allowing for warrantless seizure are irrelevant. Do you agree the two hardest individual seizure cases are the puppy, where that's not why they go into the house, although I don't think it's crazy to hear another dog and bring the puppy with the mother. That doesn't seem crazy to me. But still, that's not why they went in the house. And it was in the basement. And then the second one is when they saw the dog, the dog was not misbehaving. They had no reason to know it was unlicensed because it was on property. But what they did know about that dog was it had been outside the property before. Those are the two hardest ones. Immediately preceding that, yes, Your Honor. Do you agree, though? Well, it's not for you to say what the hardest ones are. I mean, you know. But I'm trying to give you a chance to tell us how to deal with the hardest ones is what I'm trying to say. No point talking about the ones where they just saw the dog bite somebody. Right. The other aspect of the second case that you cite, Your Honor, was this was not the first instance in which that dog had been at large. And so we have a constant circle of the animal control officers going out and coming back. And we've got 139.2 square miles to patrol in the city of Detroit and upwards of 50,000 stray dogs to worry about. Asking these animal control officers under those circumstances to call a magistrate and get a magistrate to authorize a warrant under those circumstances is unreasonable. It's not what the Fourth Amendment requires. And, again, as Judge Edmonds correctly ruled, there's a sliding scale that's at play here. I mean, as the rights of the neighboring homeowners are being infringed upon by these people who, you know, a lot of people that don't license their dog, but they want their neighbors now to pay them hundreds of thousands of dollars after they didn't license their dogs for constitutional violation. And punish their neighbors and the other taxpayers. We pay for a lot of constitutional violations of our officials, but that's part of the product of it, right? I mean, you can't say that, I mean, what you're saying is just because it's more difficult, it makes the seizure reasonable. Sometimes it's hard for the officers to comply with the law, but they still need to do so. It's not. There's no exception to the Constitution that says it's too hard. There is a constitutional premise under the Skinner case, which the judge cited, that does institute this issue of there being a sliding scale. And as the exercise of the plaintiff's property rights here have a negative impact on people that are outside of their homes is greater, then their right to a warrant is waning. Okay, thanks so much for your argument. We appreciate it, Mr. Allen. Mr. McKinney, can I try to focus you? I mean, say what you want to say, but I'm hopeful this is helpful to everybody. So I think we can probably agree that there's not a Minnell claim when dogs are seized off property entirely, like not in the backyard, not in the house. I mean, that's pretty funny to say. It's just hard to see how the ordinance or anything else caused it. But what that still leaves are the dogs that were seized in the one case inside the house or other cases maybe in the property. So what's your argument there? So with respect to the one where it was on the property, so maybe they wouldn't know it was unlicensed, but they had information that this dog had been off the property, why wouldn't that justify? Since I think you agree a stray dog you can pick up. This had been a stray. What's the answer to that? I think, number one, the officer's not coming on the scene seeing that this is a stray dog. There may have been a report somewhere. No, but they're allowed to rely on information, and that's okay. But I don't think that rises to the level of an exigent circumstance that relaxes the warrant requirement. So every time they go they're supposed to get a warrant because the dog was off the property once? They can't just go and say what's going on here? They can go and say what's going on here, and they may get a voluntary relinquishment of the dog. But I don't think they can just go because somebody reported a stray dog, go up to somebody's house and take the dog, which did happen in this case. I mean, dogs are a little bit like cars. They tend not to stay in one place. Well, if the officer can make an investigation. You know, we have exceptions for cars in the Fourth Amendment. Why isn't this somewhat similar? They leave, it's a menacing dog, and they come back and the dog's already bitten some kid. Because dogs tend to stay with their owners. And when you know where the owner lives, and I want to turn to three, you had asked for difficult cases. Let's look at the case of Bianca Peterson, whose dog was seized two days after the allegation that it bit someone. Mr. Savage, whose dog was seized four months after the allegation that it had bit another dog. Ms. Seward's dog, who was seized ten days after the allegation that her dog had knocked over a child inside her house. Again, these are varying, these are the difficult cases where where is the exigency when two days passes, when four months passes, when 12 days pass? Where's the exigency in those circumstances? Just to remind me, in those cases, that was the only evidence? That was the only evidence for which the dog was seized. Including when they arrived on the scene? Yes. When they arrived on the scene, they were following up on reports that a dog bite had taken place, or a dog altercation had taken place. They didn't see it, it had been months since the action had happened, and they went to seize it. Thank you, your honors. Any other questions? Any other questions? I'm sorry. No, thanks so much. Appreciate both of your briefs and oral arguments. Thanks so much. The case will be submitted, and the clerk may call the next case.